PHILIP R. SELLINGER
United States Attorney
SUSAN MILLENKY
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel: (973) 645-2700

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br> v.<br><br>BURLINGTON PRESERVATION ASSOCIATES, LLC D/B/A MILLSTREAM & MAPLEWOOD APARTMENTS; ARBOR MANAGEMENT, LLC; and LEON N. WEINER & ASSOCIATES, INC.,<br><br>    *Defendants*. | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

The United States of America alleges as follows:

**NATURE OF THIS ACTION**

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3619, 3631 (the Fair Housing Act).

2. The United States brings this action under 42 U.S.C. § 3612(o) on behalf of Roberto Landrau-Vega.

3. The United States alleges that the defendants discriminated against Mr. Landrau-Vega, an Army veteran and single father living in subsidized housing,

based on race and national origin by attempting to evict him and changing the locks to his apartment during a brief period of incarceration, while treating a white, incarcerated tenant more favorably. After Mr. Landrau-Vega asserted his Fair Housing Act rights by filing a complaint with the U.S. Department of Housing and Urban Development (HUD), the defendants retaliated against him by disrupting the recertification process required to maintain his housing subsidy and attempting to evict him a second time.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the District of New Jersey and because the subject property is located in this judicial district.

## PARTIES AND THE SUBJECT PROPERTY

6. The plaintiff is the United States of America.

7. Defendant Burlington Preservation Associates, LLC (Burlington), doing business as Millstream & Maplewood Apartments, is a wholly owned subsidiary of Leon N. Weiner & Associates, Inc.

8. Defendant Arbor Management, LLC (Arbor Management), is the property management affiliate of, and wholly owned by, Leon N. Weiner & Associates, Inc. Arbor Management's website describes the company as the "management agent"

of Leon N. Weiner & Associates, Inc., and lists Leon N. Weiner & Associates, Inc., executives as members of Arbor Management's leadership team.

9. Defendant Leon N. Weiner & Associates, Inc., a full-service real estate development and acquisitions company headquartered in Wilmington, Delaware, is the parent company of Burlington and Arbor Management.

10. Millstream Apartments (the subject property) is part of a development called Millstream & Maplewood Apartments with 127 units located in Wrightstown, New Jersey.

11. As of 2019, 48% of households at Millstream & Maplewood Apartments were headed by non-Hispanic white tenants. Twenty-eight percent were headed by Black tenants, and 18% were headed by Hispanic tenants.

12. Complainant Roberto Landrau-Vega and his minor children are Millstream Apartments tenants who live, and lived at all times relevant to this complaint, in unit G-2 of the subject property, located at 18 Jones Mill Road in Wrightstown, New Jersey.

13. Mr. Landrau-Vega is a Black and Hispanic man.

14. The subject property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

15. Burlington owned the subject property at all times relevant to this complaint.

16. Arbor Management managed the subject property at all times relevant to this complaint.

17. Arbor Management acted as an agent of Burlington and Leon N. Weiner & Associates, Inc., at all times relevant to this complaint. Because the actions below occurred within the scope of this agency relationship, Burlington and Leon N. Weiner & Associates, Inc., are vicariously liable for the conduct of Arbor Management.

## FACTS

*The First Attempt to Evict Mr. Landrau-Vega*

18. On or about January 18, 2019, Mr. Landrau-Vega signed a residential lease agreement with Burlington for unit G-2 in the subject property with a monthly rent of $675. Mr. Landrau-Vega has resided with his minor children at the subject property since that time.

19. Mr. Landrau-Vega has never been listed as the sole occupant of the subject property.

20. At the time Mr. Landrau-Vega signed his lease, Arbor Management included in its lease agreements, including those at Millstream & Maplewood Apartments, a rule that permitted the landlord and management, at their discretion, to initiate eviction proceedings upon the incarceration of a tenant.

21. In 2019, the incarceration rule, which was rule twenty-seven (hereafter, Rule 27) of the "House Rules" attached to and incorporated into Arbor Management's lease agreements, including Mr. Landrau-Vega's, stated, in relevant part:

> Upon notification of death, or incarceration of a sole household member or in the case of abandonment, all locks providing entry to the individual apartment will be changed. The owner/agent reserves the right to initiate eviction, as required, in order to take possession of the unit.

22. Nothing in the lease defined the phrase "as required" as used in Rule 27.

23. From approximately August 19, 2019, through October 22, 2019, Mr. Landrau-Vega was incarcerated in the Burlington County Jail.

24. Upon learning of Mr. Landrau-Vega's incarceration, Arbor Management changed the locks to his apartment.

25. Mr. Landrau-Vega's rent was paid in full while he was incarcerated.

26. On or about August 23, 2019, four days after Mr. Landrau-Vega's incarceration began, Arbor Management issued a notice to cease to Mr. Landrau-Vega on behalf of Burlington.

27. There is a three-step process that governs most residential evictions in New Jersey. A landlord must first send a "notice to cease," which warns the tenant of the alleged violation and asks them to stop the conduct. The second step is a "notice to quit," which advises the tenant to leave their home by a certain date. The third step is court action to evict the tenant.

28. The notice to cease sent to Mr. Landrau-Vega indicated that he had been personally served with the notice. Mr. Landrau-Vega was not in fact served with the notice to cease, which stated he had to immediately cease the alleged violation of Rule 27—his incarceration—or face potential eviction.

29. On or about September 6, 2019, Arbor Management, on behalf of Burlington, issued a notice to quit and demand for possession, which demanded that

Mr. Landrau-Vega vacate the unit by October 7, 2019, or face eviction, citing an ongoing violation of Rule 27.

30.   The notice to quit indicated that it had been hand delivered to Mr. Landrau-Vega.  Mr. Landrau-Vega did not receive the notice.

31.   Mr. Landrau-Vega eventually learned through family members that Burlington and Arbor Management had taken steps to evict him.  On or about October 3, 2019, his attorney notified Arbor Management that Mr. Landrau-Vega had not received any required notices and that his incarceration was temporary.

32.   Though Mr. Landrau-Vega had completed emergency access forms permitting his mother and nieces to enter his apartment, Arbor Management did not permit individuals on his emergency access form to access the unit while he was incarcerated.

33.   In an email sent October 15, 2019, the Arbor Management property manager at Millstream Apartments emailed the Arbor Management regional manager about Mr. Landrau-Vega's status, writing: "[t]oday was his court date and he has yet to come back to the apartment so unless he calls the emergency line later for entrance, I would assume he was found guilty."

34.   This regional manager contacted a person described by Arbor Management as "connected with Arbor's upper management and compliance department" to discuss Mr. Landrau-Vega's status.

35.   On or about October 15, 2019, Burlington initiated a court action to evict Mr. Landrau-Vega.

36. Mr. Landrau-Vega was released from jail on October 22, 2019.

37. Burlington dismissed the eviction action on October 29. 2019.

38. When Mr. Landrau-Vega was released, he was unable to enter his home for approximately twelve to fourteen hours, until Arbor Management provided him with new keys.

*Arbor Management's Treatment of a White Incarcerated Tenant*

39. Upon information and belief, a subsidiary of Leon N. Weiner & Associates, Inc., owned Cedar Run Apartments, a New Jersey apartment complex located in Manahawkin, New Jersey, at all times relevant to this complaint.

40. At all times relevant to this complaint, Arbor Management managed Cedar Run Apartments.

41. The property manager at Cedar Run Apartments reported to the same Arbor Management regional manager as the Millstream Apartments property manager.

42. As of 2019, approximately 90% of households at Cedar Run Apartments were headed by white tenants.

43. On July 25, 2019, a white non-Hispanic man (the Cedar Run Tenant) signed a lease agreement to occupy a unit in Cedar Run Apartments. The lease contained the same house rules that governed Millstream Apartments, including Rule 27.

44. The Cedar Run Tenant was the sole occupant of his unit.

7

45. The Cedar Run Tenant was incarcerated beginning in or around November 2019 until at least July 2022.

46. The Arbor Management property manager of Cedar Run Apartments consulted with the Arbor Management regional manager after learning that the Cedar Run Tenant had been incarcerated.

47. Arbor Management permitted a family member to access the Cedar Run Tenant's apartment after his incarceration, even though the tenant had not completed an emergency access form, and did not change the locks to the unit.

48. On January 28, 2020, Arbor Management issued a notice to cease, citing violations of Rule 27 as well as a rule that governed prolonged tenant absences.

49. According to the property manager, Arbor Management did not serve the notice to cease immediately because the Cedar Run Tenant's release date was unknown to Arbor Management and because the property manager viewed him as innocent until proven guilty.

50. Six weeks later, on March 10, 2020, Arbor Management issued a notice to quit and a demand for possession, citing a failure to pay rent. The notice did not cite Rule 27.

51. According to Arbor Management's records, the Cedar Run Tenant failed to pay rent for three months of his incarceration.

52. Arbor Management did not initiate eviction proceedings against the Cedar Run Tenant but instead entered into a voluntary termination agreement

effective May 1, 2020, approximately five months after his incarceration began, that arranged for a surrender of the unit and keys.

53. Arbor Management did not change the locks to the Cedar Run Tenant's apartment until they had arranged a voluntary surrender.

*After Mr. Landrau-Vega Lodges a Discrimination Complaint, Arbor Management Disrupts His Rental Subsidy Recertification Process and Begins New Eviction Proceedings*

54. Millstream & Maplewood Apartments is part of the U.S. Department of Agriculture (USDA) Rural Development Program. The Rural Development Program assists rural property owners through loans and other assistance to subsidize rent for low-income tenants.

55. Landlords who participate in the Rural Development Program calculate rental rates for their units based on an agreed-upon budget with the USDA.

56. To establish eligibility for occupancy of Rural Development Program buildings, and for any rental assistance received, tenants in Rural Development Program properties must recertify their income annually through a process administered by their landlord or their landlord's agents. The landlord calculates the rental assistance amount for each tenant.

57. As part of each tenant's annual recertification process, the landlord completes the USDA-Rural Housing Service Tenant Certification form, which reports the tenant's adjusted annual income and calculates what the tenant owes for a subsidized unit.

58. Millstream & Maplewood Apartments had approximately sixty-one USDA-subsidized units as of 2020.

59. Arbor Management administered the Millstream & Maplewood Apartments recertification process for Burlington at all times relevant to this complaint.

60. In early 2020, Mr. Landrau-Vega began receiving USDA rental assistance and paid zero dollars in monthly rent in 2020 and 2021. Beginning in 2022, he paid $43 in monthly rent and, beginning in 2023, he again paid zero.

61. On January 21, 2020, Mr. Landrau-Vega filed a complaint with HUD, alleging that the Arbor Management property manager and Burlington had discriminated against him in violation of the Fair Housing Act by trying to evict him during his incarceration.

62. On July 26, 2022, Burlington and Arbor Management filed a lawsuit in U.S. District Court seeking to end or limit HUD's investigation into Mr. Landrau-Vega's discrimination complaint.

63. On April 21, 2023, Burlington's lawsuit against HUD was dismissed without prejudice pursuant to a stipulation between the parties.

64. HUD continued its investigation into Mr. Landrau-Vega's discrimination complaint in 2023 and early 2024.

65. Mr. Landrau-Vega's USDA rental subsidy would expire on February 1, 2024, if Arbor Management did not timely complete the recertification process.

66. In early January 2024, as he had in past years, Mr. Landrau-Vega submitted his recertification paperwork to Arbor Management in anticipation of a February 1, 2024, renewal date.

67. Mr. Landrau Vega's income and assets as of January 2024 were similar to prior years when he had received a subsidy that brought his monthly rental payment to zero dollars.

68. Unlike in past years, Arbor Management spent weeks demanding supplemental documentation and explanation that it had not requested during prior recertification processes.

69. Mr. Landrau-Vega timely responded to these demands, providing the requested documentation and explanations.

70. Arbor Management did not complete the recertification process for Mr. Landrau-Vega for rental assistance by February 1, 2024.

71. Starting on February 1, 2024, according to documents later filed in landlord-tenant court, Arbor Management began charging Mr. Landrau-Vega a monthly rent of $1,605, an amount that he could not afford without a rental subsidy.

72. From February 2024 through at least April 2024, Mr. Landrau-Vega received no USDA rental assistance.

73. There was no reasonable justification for Arbor Management's failure to complete the recertification process for Mr. Landrau-Vega.

74. On February 20, 2024, Burlington issued a notice to cease to Mr. Landrau-Vega "[f]or failure to complete your yearly recertification."

75. In March 2024, Burlington issued multiple notices to quit based on Mr. Landrau-Vega's failure to pay rent.

76. In June 2024, Burlington filed a second eviction action against Mr. Landrau-Vega, this time for unpaid rent.

77. The second eviction action was dismissed in August 2024. The order of dismissal permits Burlington to refile.

## HUD ADMINISTRATIVE PROCESS

78. On January 21, 2020, Mr. Landrau-Vega timely filed a complaint with the HUD alleging that Burlington and Arbor Management had discriminated against him in violation of the Fair Housing Act.

79. On March 23, 2022, Mr. Landrau-Vega amended his HUD complaint.

80. On May 8, 2024, Mr. Landrau-Vega amended his HUD complaint a second time.

81. Pursuant to 42 U.S.C. § 3610, HUD completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.

82. Based upon the information gathered in its investigation, HUD determined that reasonable cause existed to believe that defendants violated the Fair Housing Act and issued a charge of discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A) on August 27, 2024, charging defendants with engaging in discriminatory housing practices.

83. On September 12, 2024, defendants timely elected to have the claims asserted in the HUD charge resolved in a civil action in United States District Court pursuant to 42 U.S.C. § 3612(a).

84. HUD then terminated the administrative proceeding and authorized the Attorney General to commence a civil action under 42 U.S.C. § 3612(o).

## CAUSE OF ACTION

85. Plaintiff realleges and incorporates by reference the allegations set forth above.

86. By the conduct described in the foregoing paragraphs, the defendants have:

    a. Denied housing or otherwise made housing unavailable because of race and national origin in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of race and national origin, in violation of 42 U.S.C. § 3604(b); and

    c. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

87. Mr. Landrau-Vega is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and has suffered damages as a result of the defendants' discriminatory and retaliatory conduct.

88. Defendants' conduct was intentional, willful, and taken in reckless disregard of Mr. Landrau-Vega's rights.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter an order that:

1. Declares that the defendants' actions, policies, and practices, as alleged in this complaint, violated the Fair Housing Act;

2. Enjoins the defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from:

   a. Refusing to sell or rent after the making of a bona fide offer, or refusing to negotiate for the sale or rental of, or otherwise making unavailable or denying, a dwelling to any person based on race or national origin, in violation of 42 U.S.C. § 3604(a);

   b. Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, based on race or national origin, in violation of 42 U.S.C. § 3604(b);

   c. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed, or on account of that person's having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617;

    d. Failing or refusing to take such affirmative steps as may be necessary to restore Mr. Landrau-Vega, as nearly as practicable, to the position he would have been in but for the discriminatory conduct; and

    e. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory or otherwise unlawful conduct in the future and to eliminate, to the extent practicable, the effects of the defendants' discriminatory or otherwise unlawful conduct;

3. Awards monetary damages to Mr. Landrau-Vega for the defendants' discriminatory conduct, as authorized by 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

4. Awards such additional relief as the interests of justice may require.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: November 13, 2024

                                Respectfully submitted,

                                PHILIP R. SELLINGER
                                United States Attorney

By:    *s/ Susan Millenky*
        SUSAN MILLENKY
        Assistant United States Attorney
        District of New Jersey
        970 Broad Street, Suite 700
        Newark, NJ 07102
        Phone: (973) 645-2700
        Email: susan.millenky@usdoj.gov

        *Attorney for Plaintiff*
        *United States of America*